UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
JOSE DIAZ, *pro se*,

                    Petitioner,

        -against-

LOUIS F. MARSHALL, Superintendent,
Sing Sing Correctional Facility,

                    Respondent.
---------------------------------X

NOT FOR PRINT OR
ELECTRONIC PUBLICATION

**MEMORANDUM & ORDER**

04-CV-1650 (KAM)

**MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        *Pro se* petitioner Jose Diaz ("petitioner") is
incarcerated pursuant to a judgment of conviction imposed in
Supreme Court, Kings County.  Alleging that his state custody
violates his federal and constitutional rights, petitioner seeks
relief pursuant to 28 U.S.C. § 2254.  For the reasons set forth
below, the petition is denied.

**BACKGROUND**

**I.   Statement of Facts**

        Petitioner's imprisonment resulted from his guilty
plea to, among other crimes, the murder of Rafael Ferreira ("the
victim").  Before pleading guilty, petitioner sought a motion to
suppress identification testimony from a pre-arraignment lineup.
To determine the admissibility of the lineup identification and
whether police had probable cause to arrest petitioner, the

Supreme Court, Kings County, conducted a *Wade/Dunaway*[1] hearing, ultimately denying the motion. During the hearing, the following facts were revealed:

On April 3, 1995, petitioner stole beer from a bodega in Brooklyn and made harassing comments to three men working in the store, Marino Fernandez, Edwin Ferreira, and Rafael Ferreira. (ECF No. 27, State Court Record ("State Record"), Ex. A, Transcript of *Wade/Dunaway* Hearing dated Mar. 11, 1996 ("Wade/Dunaway Tr.") at 6, 45-47.) Petitioner returned to the bodega later that night and spotted Rafael Ferreira getting into a car occupied by the other two men. (*Id.* at 48.) Petitioner began shooting at the victim. (*Id.*) The three men, including a mortally wounded Rafael Ferreira, left the scene and drove to the police precinct. (*Id.* at 45.)

At the precinct, Detective Morris interviewed Marino Fernandez and Edwin Ferreira. (*Id.*) The two men told Detective Morris about the incident and described the physical appearance of the shooter, whom they knew as "Manny." (*Id.* at 48-49.) The victim was not able to speak and died moments after arriving at the precinct. (*Id.*) The next morning, another eyewitness to

---

[1] *Wade* and *Dunaway* hearings are pre-trial proceedings conducted by the court to determine the admissibility of evidence. In a *Wade* hearing, the court determines the admissibility of out-of-court identifications that the prosecution seeks to introduce at trial. *See United States v. Wade*, 388 U.S. 218 (1967). In a *Dunaway* hearing, the court determines whether the police had probable cause to arrest a defendant. *See Dunaway v. New York*, 442 U.S. 200 (1979); *see also Chappero v. West*, No. 04 CV 8018, 2009 WL 2058534, at *10 n.5 (S.D.N.Y. July 15, 2009).

the shooting came to the precinct and identified the shooter as an individual named Manny. (*Id.* at 50-51.) All three witnesses knew Manny from their neighborhood. (*Id.* at 51.) This third witness then called his mother, who informed him that transit officers arrested the same Manny around midnight on April 3 into April 4. (*Id.* at 52.) The witness relayed this information to Detective Morris. (*Id.*)

Upon further investigation, Detective Morris discovered that on or about midnight on April 4, transit officers arrested petitioner for jumping over a subway turnstile. (*Id.* at 17, 52.) Petitioner matched the description of the shooter given by the witnesses. (*Id.* at 53.) Officer Mack, the officer who brought petitioner to Transit District 32 for processing after he was arrested for turnstile jumping, at all relevant times was unaware of the pending homicide investigation against petitioner. (*Id.* at 18, 21, 32.) Petitioner was not arraigned or assigned counsel for jumping the turnstile. (*Id.* at 29, 53.)

Detective Morris removed petitioner from his holding cell, advised him of his *Miranda* rights, and asked petitioner if his name was Manny, which petitioner answered in the affirmative. (*Id.* at 53-54.) Detective Morris then conducted a lineup, in which four witnesses positively identified petitioner as the individual they saw shoot the victim, and a fifth witness

identified petitioner as the person that he saw running from the scene.  (*Id*. at 59-61.)  As a result of the positive identifications, Detective Morris arrested petitioner for homicide.  (*Id*. at 64.)  Petitioner did not present any evidence at the *Wade/Dunaway* hearing.  (*Id*. at 111.)

The court denied petitioner's *Wade* and *Dunaway* motions, finding that (1) the police had probable cause to take petitioner into custody for the homicide; and (2) Detective Morris conducted the lineup appropriately.  (*Id*. at 124.) Furthermore, the court held that, at the time of the lineup, no right to counsel had attached because petitioner had not been arraigned on the turnstile jumping charge.  (*Id*. at 125-126.)

## II.  **The 1996 Conviction and Sentence**

On March 13, 1996, petitioner pled guilty to murder in the second degree, attempted murder in the second degree, robbery in the first degree, three counts of attempted robbery in the first degree, assault in the second degree, criminal possession of a weapon in the third degree, and petit larceny. (State Record, Ex. A, Transcript of Plea dated Mar. 13, 1996 at 21-22.)

On March 25, 1996, petitioner was sentenced to concurrent prison terms of twenty years to life for the murder conviction, eight to twenty-four years for attempted murder in the second degree and robbery in the first degree, four to

4

twelve years for attempted robbery and criminal possession of a weapon in the second degree, two and one-third to seven years for criminal possession of a weapon in the third degree, and one year for petit larceny. (State Record, Ex. A, Transcript of Sentence dated Mar. 25, 1996 at 13.)

## III. <u>Appeal and State Post-Conviction Proceedings</u>

On April 29, 1997, in the Supreme Court, Kings County, petitioner submitted a *pro se* motion to withdraw his guilty plea, which the court construed as a § 440.10 motion to vacate his judgment of conviction (the "first § 440.10 motion"). (State Record, Ex. B, Affidavit of Defendant Upon Motion to Withdraw Plea of Guilty dated Apr. 29, 1997 ("First § 440.10 Mot." at 1.) Petitioner claimed that he was denied effective assistance of counsel, alleging that his trial counsel coerced petitioner to plead guilty and did not fully inform him that the court might impose an excessive sentence. (*Id*. at 2.) The court denied the first § 440.10 motion on August 11, 1997, finding that petitioner had "knowingly and voluntarily" pleaded guilty. (State Record, Ex. B, Decision and Order by Judge Ronald J. Aiello dated Aug. 11, 1997 at 4.)

Petitioner, represented by counsel, filed an appeal in the Appellate Division by way of a motion challenging his sentence. (State Record, Ex. C, Notice of Motion dated Jan. 25,

2000 ("Direct Appeal Mot.").[2])  Petitioner sought a reduction of

his sentence in the interest of justice, arguing that his

sentence was excessive.  (*Id.*)  *See People v. Diaz*, 716 N.Y.S.2d

351 (N.Y. App. Div. 2000).  The Appellate Division denied the

appeal without opinion and affirmed petitioner's sentence on

November 27, 2000.  *Diaz*, 716 N.Y.S.2d at 351.  On March 22,

2001, the New York Court of Appeals denied petitioner's

application for leave to appeal.  *People v. Diaz*, 96 N.Y.2d 782

(2001).

On December 18, 2001, petitioner filed a second *pro se*

§ 440.10 motion to vacate his judgment of conviction (the

"second § 440.10 motion").  (State Record, Ex. D, Affidavit in

Support of Motion to Vacate Judgment dated Dec. 18, 2001

("Second § 440.10 Mot.").)  In the second § 440.10 motion,

petitioner argued that his counsel was ineffective for failing

to challenge the identification lineup, which petitioner claims

was conducted in violation of his right to counsel and after his

unlawful detention by the police.  (Second § 440.10 Mot. ¶ 1.)

On April 25, 2002, the state court denied the second § 440.10

motion.  (State Record, Ex. D, Decision and Order by Judge

---

[2]  Respondent states in the Affirmation in Opposition to Petition for a Writ of Habeas Corpus that petitioner's direct appeal motion was dated March 24, 2000.  (ECF No. 26, Affirmation in Opposition to Petition for a Writ of Habeas Corpus dated Oct. 24, 2008 ¶ 12.)  The state court record, however, reflects that the direct appeal motion and affirmation in support were dated January 25, 2000.  (State Record, Ex. C, Direct Appeal Mot.)

Michael A. Gary dated Apr. 25, 2002 at 5.)  The court ruled that
the motion was procedurally barred under N.Y. Crim. Proc. Law
§§ 440.10(2)(c) and (3)(c), because petitioner could have raised
his claim in his prior motion to vacate the judgment of
conviction and on direct appeal and did not do so.  (*Id*. at 3.)
Further, the court stated that even if it reviewed petitioner's
claim on the merits, it would have denied petitioner's motion to
vacate.  (*Id*.)  The court reasoned that counsel had raised the
issue of whether the right to counsel attached at the lineup,
and that counsel did not have to raise the delay in arraignment
claim because it was frivolous.  (*Id*. at 4.)  On September 4,
2002, the Appellate Division denied petitioner's leave to
appeal.  (ECF No. 26, Affirmation in Opposition to Petition for
a Writ of Habeas Corpus dated Oct. 24, 2008 ("Opp'n") ¶ 17.)
*See People v. Diaz*, No. 2002-04736 (N.Y. App. Div. Sept. 2,
2002).  Finally, on October 28, 2002, the New York Court of
Appeals dismissed petitioner's application for leave to appeal.
*People v. Diaz*, 98 N.Y.2d 767 (2002).

On May 23, 2002, petitioner moved for writ of error
*coram nobis* in the Appellate Division (the "first *coram nobis*
motion").  (State Record, Ex. F, Affidavit in Support of
Application for a Writ of Error *Coram Nobis* dated May 23, 2002
("First *Coram Nobis*").)  Petitioner argued that he received
ineffective assistance of appellate counsel because his

appellate counsel relied solely on his excessive sentence and did not raise the issue that his trial counsel was ineffective for failing to argue that the police denied petitioner his right to counsel when he was not properly arraigned on the turnstile jumping charge. (*Id.* at ¶¶ 2-3; State Record, Ex. F, Respondent Memorandum of Law in Opposition to Motion for Writ of Error *Coram Nobis* dated July 11, 2007 ("Resp't *Coram Nobis* Mem.") at 9.)

On March 20, 2003, while petitioner's first *coram nobis* motion was pending, petitioner submitted a third *pro se* § 440.10 motion to vacate his judgment of conviction (the "third § 440.10 motion"). (State Record, Ex. E, Affidavit in Support of Motion to Vacate Judgment dated Mar. 20, 2003 ("Third § 440.10 Mot.").) Petitioner claimed that his conviction should be vacated because (1) the trial court failed to make a *Huntley*[3] ruling on certain statements made by petitioner; (2) he should have been issued a Desk Appearance Ticket for jumping the subway turnstile; and (3) he received ineffective assistance of counsel due to counsel's failure to challenge the admissibility of petitioner's statements and to inquire as to the eyewitnesses' independent knowledge of petitioner. (*Id.*) On July 23, 2003,

---

[3] A *Huntley* hearing is held by the court before trial to resolve the issue of the admissibility of a confession or admission. *See People v. Huntley*, 15 N.Y.2d 72 (1965); *see also Acosta v. Artuz*, 575 F.3d 177, 187 n.3 (2d Cir. 2009).

the court denied petitioner's motion.  (State Record, Ex. E, Decision and Order by Judge Joseph S. Silverman dated July 23, 2003 at 3.)  The court held that (1) the claims were procedurally barred because petitioner could have raised them in his prior § 440.10 motions and on direct appeal; (2) the pedigree exception to *Miranda* applied to the statement made by petitioner regarding his name; and (3) there was no basis to conclude that petitioner received ineffective assistance of counsel.  (*Id.* at 3-5.)  On December 19, 2003, the Appellate Division, without opinion, denied petitioner's application for leave to appeal.  (Opp'n ¶ 21.)  *See People v. Diaz*, No 2003-08144 (N.Y. App. Div. Dec. 19, 2003).

Still awaiting determination of his petition for a writ of error *coram nobis*, petitioner moved for a writ of habeas corpus on April 1, 2004.  (ECF No. 1, Petition for Writ of Habeas Corpus dated Apr. 1, 2004 ("Pet.").)  On July 2, 2007, this court granted respondent's request to hold the petition in abeyance until the New York State courts rendered a final decision on his May 23, 2002 motion for writ of error *coram nobis* filed.  (ECF No. 12, Order dated July 02, 2007.)

On July 10, 2007, before any decision by the Appellate Division on his first *coram nobis* motion, petitioner filed an amended motion for a writ of error *coram nobis* ("amended *coram nobis* motion").  (ECF No. 28-1, Petition for a Writ of Error

*Coram Nobis* dated July 10, 2007 ("Second *Coram Nobis*").)  In the
amended *coram nobis* motion, petitioner argued that appellate
counsel was ineffective for failing to argue that petitioner was
denied his right to counsel during the lineup, that petitioner's
arraignment was unlawfully delayed, that petitioner's statements
were involuntary, and that trial counsel was ineffective.  (*Id.*
¶¶ 9-11.)

On August 7, 2007, the Appellate Division denied
petitioner's motion for a writ of error *coram nobis* on the
merits, finding that petitioner "failed to establish that he was
denied effective assistance of appellate counsel." *People v.
Diaz*, 839 N.Y.S.2d 919 (N.Y. App. Div. 2007).  By order dated
September 18, 2007, this court granted petitioner sixty days
after a final decision was rendered by the Appellate Division on
petitioner's *coram nobis* motion to amend his habeas petition.
(ECF No. 14, Order dated Sep. 18, 2007.)

On November 8, 2007, the Appellate Division denied
without opinion petitioner's motion for leave to reargue the
decision and order dated August 7, 2007, which denied
petitioner's motion for a writ of error *coram nobis*.  (Opp'n
¶ 29.)  *See People v. Diaz*, No. 1996-04078 (N.Y. App. Div. Nov.
8, 2007).  Finally, on May 15, 2008, the New York Court of
Appeals denied petitioner's application for leave to appeal from

the denial of the *coram nobis* motion. *People v. Diaz*, 10 N.Y.3d 862 (2008).

## IV. **The Instant Habeas Petition**

On July 18, 2008, petitioner filed an amended habeas corpus petition and accompanying memorandum of law. (ECF No. 18, Amended Petition for Writ of Habeas Corpus dated July 8, 2008 ("Am. Pet.").) Liberally construing petitioner's *pro se* petition, as the court must, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), petitioner makes the following arguments: (1) the police deliberately delayed petitioner's arraignment on his turnstile jumping charge to deprive him of counsel at the subsequent homicide lineup, in violation of his Sixth Amendment right to counsel (the "right to counsel claim"); (2) the police lacked probable cause for petitioner's homicide arrest in violation of the Fourth Amendment (the "unlawful detention claim"); and (3) his appellate counsel was ineffective for failing to raise the issues presented in points one and two above (the "ineffective assistance of counsel claim"). (ECF No. 19, Memorandum of Law in Support of Writ of Habeas Corpus dated July 18, 2008 ("Pet. Mem.") at 3, 6-7, 9, 11-12, 19, 21.)

DISCUSSION

## I. **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996),

established a deferential standard that federal courts must apply in reviewing state court decisions on habeas review. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Furthermore, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

In the instant action, petitioner failed to exhaust the first two grounds for relief, the right to counsel and the unlawful detention claims. Moreover, these two claims are procedurally barred from federal habeas review because petitioner cannot, at this time, return to state court to exhaust the claims. It does not appear that petitioner exhausted his third ground for relief, the ineffective assistance of counsel claim. Regardless, the ineffective assistance of counsel claim is denied on the merits.

## II. Right to Counsel and Unlawful Detention Claims: Failure to Exhaust and Procedural Bar

Petitioner failed to exhaust his right to counsel and unlawful detention claims because he did not present the substance of these claims to the state courts either on direct appeal or on post-conviction collateral proceedings. As was stated above, a § 2254 habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). In order to exhaust a claim in state court, "a petitioner must present the *substance* of the same federal constitutional claims

he raises in his federal petition to the highest court in the state." *Carpenter v. Reynolds*, 212 F. Supp. 2d 94, 96 (E.D.N.Y. 2002) (emphasis added); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state." (internal quotation marks and citation omitted)). Notably, a claim for ineffective assistance of counsel for failing to raise an underlying claim does not exhaust the underlying claim. *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001).

Here, petitioner raised the substance of his right to counsel and unlawful detention claims to the trial court during his *Wade/Dunaway* hearing. (*See Wade/Dunaway* Tr.) Petitioner, however, failed to present the substance of these claims to any appellate court thereafter, either on direct appeal or on post-conviction collateral review, and thus failed to properly exhaust these claims. *See Carpenter*, 212 F. Supp. 2d at 96 (noting that "a petitioner must present the substance of the same federal constitutional claims he raises in his federal petition to the highest court in the state"); *see also Bossett*, 41 F.3d at 828 (similar).

In post trial submissions, petitioner raised the alleged violation of his right to counsel during the lineup and unlawful detention in connection with his claims of ineffective

assistance of trial and appellate counsel.  For instance, in the second § 440.10 motion, petitioner argued that his trial counsel was ineffective because he failed to challenge a lineup conducted in violation of his right to counsel and after an unlawful detention by the police.  (Second § 440.10 Mot. ¶ 1.) Similarly, in his May 23, 2002 motion for a writ of error *coram nobis*, petitioner argued that he received ineffective assistance of counsel because his appellate counsel failed to argue that his trial counsel was ineffective for not arguing that he was denied his right to counsel when police unlawfully delayed his arraignment on the turnstile jumping charge. (First *Coram Nobis* ¶ 11; Resp't *Coram Nobis* Mem. at 9.)  Lastly, in his July 10, 2007 motion for a writ of error *coram nobis*, petitioner argued that his appellate counsel was ineffective for failing to challenge the lineup conducted in violation of his right to counsel and after an unlawful detention, and for failing to argue that his trial counsel was ineffective.  (Second *Coram Nobis* ¶¶ 9-11.)  Raising ineffective assistance of counsel claims in petitioner's two writ of error *coram nobis* motions and § 440.10 motion, however, does not exhaust the underlying claims because the substance was never presented to the state appellate courts.  *See Turner*, 262 F.3d at 123.

Generally, if a federal habeas petition contains unexhausted claims, a federal court should dismiss the petition.

*See Bossett*, 41 F.3d at 828.  Nevertheless, when the petitioner no longer has remedies available in the state courts, the court may deem the claims exhausted because any attempt to pursue the claims in state court would be fruitless.  *Bossett*, 41 F.3d at 828-29 ("It would thus be fruitless to require [petitioners] to pursue these claims in state court, and we deem the claims exhausted.").

In New York, the law "mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record."  *Reyes v. Keyes*, 118 F.3d 136, 139 (2d Cir. 1997); *see* N.Y. Crim. Proc. Law § 440.10(2)(c).  Here, petitioner unjustifiably failed to raise his right to counsel and unlawful detention claims on appeal, despite having developed such claims at the trial level during the *Wade/Dunaway* hearing.  Because of the procedural default under § 440.10(2)(c), any attempt by petitioner to return to state court to exhaust these claims would be fruitless.  Consequently, the court deems the claims exhausted.  *See Bossett*, 41 F.3d at 829.

"However, the same procedural default[] prevent[s] [the court] from addressing the merits of these claims."  *Id.*  It is clear that "when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required

to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing *Aparicio*). The right to counsel and unlawful detention claims are, therefore, exhausted but procedurally defaulted.

"An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*); *see also Bossett*, 41 F.3d at 289 ("Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner."). Cause may be demonstrated with "a showing that . . . the procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted); *see also Bossett*, 41 F.3d at 829 (quoting *Murray*). Here, petitioner does argue that appellate counsel was ineffective for failing to raise the right to counsel and unlawful detention claims on direct appeal. (*See* Am. Pet.) As set forth below, however, the ineffective

assistance of counsel claim is meritless, and thus does not constitute cause to overcome the procedural default. *See infra.* Petitioner has not otherwise shown cause for the default, nor does he argue that he is actually innocent. Because the required showing of cause and prejudice or a fundamental miscarriage of justice has not been made with respect to the procedurally defaulted claims, the right to counsel and unlawful detention claims are dismissed.

## III. <u>Ineffective Assistance of Counsel Claim: Failure to Exhaust and Denial on Merits</u>

It appears from the record that petitioner's ineffective assistance of counsel claim is also unexhausted. For a federal court to reach the merits of an ineffective assistance of counsel claim, petitioner must have presented all of his underlying allegations to the state courts. *Sanford v. Senkowski*, 791 F. Supp. 66, 68 (E.D.N.Y. 1992) ("In order for [a federal court] to reach the merits of petitioner's claim of ineffective assistance of counsel, all of his allegations must have been presented to the state courts, allowing them the 'opportunity to consider *all* the circumstances and cumulative effect of the claims as a whole.'" (quoting *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991))). Here, petitioner filed a motion for a writ of error *coram nobis* dated May 23, 2002. (First *Coram Nobis* ¶ 11.) In that first *coram nobis* motion,

petitioner argued that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective. (First *Coram Nobis* ¶ 11; Resp't *Coram Nobis* Mem. at 9.) Petitioner did not argue, as he does in the instant habeas petition, that appellate counsel was ineffective for failing to raise the right to counsel and unlawful detention claims. (*See* Am. Pet. at 3, 6-7, 9, 11-12.) Because petitioner did not raise the underlying allegations of the ineffective assistance of appellate counsel claim to the state courts in his first motion for a writ of error *coram nobis*, he did not properly exhaust this claim. *See Sanford*, 791 F. Supp. at 68.

Petitioner did, however, file an amended motion for a writ of error *coram nobis* dated July 10, 2007. (Second *Coram Nobis*.) In the amended motion, petitioner alleged that appellate counsel was ineffective for failing to raise the right to counsel and unlawful detention claims, the same underlying allegations of the ineffective assistance of appellate counsel claim raised in the instant petition. (*See* Second *Coram Nobis* ¶¶ 9-11; Am. Pet.) The Appellate Division, in finding that petitioner had "failed to establish that he was denied the effective assistance of appellate counsel" and denying the writ of error *coram nobis*, *People v. Diaz*, 839 N.Y.S.2d 919 (N.Y. App. Div. 2007), did not specify which motion it considered. The Appellate Division finding could be based on consideration

of either the first or second *coram nobis* motion.  If the

Appellate Division considered only the first *coram nobis* motion,

dated May 23, 2002, then the ineffective assistance of counsel

claim is not exhausted.  If, however, the Appellate Division

considered the amended *coram nobis* motion, dated July 10, 2007,

then the instant ineffective assistance of counsel claim would

be exhausted.

Nevertheless, whether the ineffective assistance of

counsel claim is properly exhausted is irrelevant because the

court concludes that the claim is meritless.[4]  A federal court

may, in its discretion, deny a habeas petition containing

unexhausted claims on the merits.  28 U.S.C. § 2254(b)(2)

(stating that "[a]n application for a writ of habeas corpus may

be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the

State"); *Pulinario v. Goord,* 291 F. Supp. 2d 154, 171 (E.D.N.Y

2003), *aff'd*, 118 F. App'x 554 (2d Cir. 2004) (holding that "a

---

[4] Because the court concludes, upon a *de novo* review, that the ineffective
assistance of counsel claim is meritless, the court need not determine
whether, if the claim is deemed exhausted, the state court adjudication of
the claim was "contrary to, or involved an unreasonable application of,
clearly established Federal law," or was "based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding."  28 U.S.C. § 2254(d).  The state court here found that
petitioner had "failed to establish that he was denied the effective
assistance of appellate counsel."  *People v. Diaz*, 839 N.Y.S.2d 919 (N.Y.
App. Div. 2007).  If the claim is found on *de novo* review to be meritless,
then the state court determination that petitioner failed to establish that
he was denied effective assistance of counsel was not, by necessity, contrary
to, nor did it involve an unreasonable application of, clearly established
federal law.

district court may . . . in its discretion, *deny* on the merits habeas petitions containing unexhausted claims"). Reaching the merits of the unexhausted claim here, the court finds that petitioner was not denied effective assistance of appellate counsel, and the claim is dismissed.

### A. Ineffective Assistance of Counsel Standard

The standard governing ineffective assistance of counsel claims is well-established and was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Under *Strickland*, the appropriate inquiry for ineffective assistance of counsel claims is whether petitioner was afforded "reasonably effective assistance" of counsel, such that counsel's actions neither: (1) fell below the objective standard of reasonableness ("the performance prong"); nor (2) caused a reasonable probability that the result of the trial would have been different but for counsel's unprofessional errors ("the prejudice prong"). *Strickland*, 466 U.S. at 686-95.

First, in applying the performance prong of this standard, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir. 1982) ("Trial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy."). Further, counsel's action must be viewed as of the time of the trial. *Strickland*, 466 U.S. at 690. Moreover, "[a]n attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'" *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

Second, under the prejudice prong, "[t]he benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). Thus, even objectively unreasonable errors on the part of counsel will not result in setting aside a judgment in a criminal proceeding if the errors can be shown to have had no effect on the judgment. *Strickland*, 466 U.S. at 691.

This same *Strickland* standard applies when determining whether appellate counsel on direct appeal has provided constitutionally effective assistance. *See Aparicio*, 269 F.3d at 95 ("Although it was born in the context of ineffective assistance of trial counsel, *Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." (citing *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985))); *see also Gaskin v. Graham*, No. 08-CV-1124, 2009 WL 5214498, at *17 (E.D.N.Y. Dec. 30, 2009) ("In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the standard established in *Strickland v. Washington* for analyzing such claims as to trial counsel." (internal citation omitted)).

Notably, in the context of ineffective assistance of appellate counsel claims, under the performance prong, it is well established that an attorney need not bring every potential non-frivolous claim on direct appeal. Rather, appellate counsel may appropriately "select among" potential non-frivolous claims to "maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Indeed, "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v.*

*Murray,* 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).

Additionally, under the prejudice prong, "in the appellate context, a petitioner must demonstrate that there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court]." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). That is, to show prejudice in the appellate context, petitioner has to show that there is a reasonable probability that he would have been successful in his appeal. *See Gaskin*, 2009 WL 5214498, at *17 (citing *Mayo*, 13 F.3d at 533-34; *Aparicio*, 269 F.3d at 95).

### B. Application

Here, petitioner claims that his appellate counsel was ineffective for failing to raise on direct appeal the right to counsel and unlawful detention claims, i.e. the claims that the police deliberately delayed his arraignment on a turnstile jumping charge to deprive him of counsel at the subsequent homicide lineup, and that there was no probable cause for his homicide arrest. (*See* Pet. Mem. at 3, 6-7, 9, 11-12.) Applying the *Strickland* standard outlined above, the court finds that petitioner cannot satisfy the performance prong of the test, that is, petitioner cannot show that his appellate counsel's

performance fell below the objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.

As an initial matter, because, as outlined below, petitioner's underlying right to counsel and unlawful detention claims are meritless, appellate counsel cannot be found to be ineffective for failing to raise these claims on appeal. *See Noble*, 363 F. App'x at 773 ("An attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'" (quoting *Arena*, 180 F.3d at 396)). First, the claim that petitioner was denied his right to counsel at the homicide lineup fails as a matter of law. "[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). In the instant case, no formal proceedings had been commenced against petitioner at the time of the pre-arraignment lineup, and therefore no Sixth Amendment right had attached. *Id.* at 689; *see also Manuel v. Conway*, No. 07-CV-6623, 2010 WL 2104302, at *6 (W.D.N.Y. May 25, 2010) (holding that petitioner did not have a right to counsel at an investigatory lineup even after he invoked his right to counsel); *William v. Artus*, 691 F. Supp. 2d 515, 523 (S.D.N.Y. 2010) (holding that "no formal proceedings were initiated against the petitioner at the time of the lineup" and that

"[t]herefore, the petitioner had no Sixth Amendment right to counsel at that time").

The argument that the police deliberately delayed petitioner's arraignment on the turnstile jumping charge to deprive him of his right to counsel at the lineup is equally meritless. The evidence in this case does not show that the police deliberately delayed arraignment for the purpose of depriving petitioner of his right to counsel. From the time that Officer Mack brought petitioner to the precinct for arrest processing until the time that he left for the evening, he was unaware of the pending homicide investigation against petitioner. (*Wade/Dunaway* Tr. at 18, 21, 32.) Thus, when Officer Mack detained petitioner in the holding cell instead of arraigning him, he did not do so in order to deprive him of any rights at the lineup. Additionally, when Detective Morris took petitioner into the lineup, he did so in order to investigate a new crime. Such delay in arraignment does not amount to a constitutional violation warranting habeas relief. *See Sease v. Goord*, No. 01 Civ. 1378, 2003 WL 23100261, at *7 (S.D.N.Y. Dec. 30, 2003) (denying habeas petition when the petitioner's arraignment was delayed as a result of his return to the Manhattan Robbery Squad from Central Booking so that he could participate in lineups concerning unrelated robberies); *Greene v. Brown*, No. 06 Civ. 5532, 2007 WL 1589449, at *12 (S.D.N.Y.

June 4, 2007) (noting that "a delay in arraignment can be justified by an appropriate police investigation, including lineups"); *Haywood v. Portuando*, 288 F. Supp. 2d 446, 466-67 (S.D.N.Y. 2003) (rejecting claim that the police intentionally delayed arraignment to deny petitioner right to counsel during questioning "[b]ecause the delay in bringing [the petitioner] to court for arraignment was justified based on the circumstances of the ongoing investigation"); *Irons v. Ricks*, No. 02 Civ. 4806, 2003 WL 21203409, at *9-*11 (S.D.N.Y. May 22, 2003) (denying habeas petition in the absence of any evidence that the delay in arraignment was caused by anything other than the need to investigate the petitioner's role in several robberies); *see also Holmes v. Scully*, 706 F. Supp. 195, 203 (E.D.N.Y. 1989) (noting that "state delay in arraigning an arrested person does not in itself justify habeas relief, except insofar as it contributes to a finding that [petitioner's] inculpatory statements were the product of coercion").  Therefore, because no formal proceedings had begun concerning petitioner at the time of the lineup, and because the police were warranted in delaying the arraignment for further investigation into the homicide, petitioner was not denied his Sixth Amendment right to counsel at the lineup.

As to the unlawful detention claim, the argument that the police had no probable cause to hold petitioner for the

homicide charge is also meritless. For an officer to establish probable cause to arrest an individual, the officer must have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000)). In determining whether probable cause was present, the court considers the "totality of the circumstances" and "those facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks and citation omitted). Furthermore, it is "well-established that a law enforcement official has probable cause to arrest if he received his information from . . . [an] eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta*, 460 F.3d at 395 (internal quotation marks and citations omitted). Courts in this circuit have "endorsed the proposition that 'an identified citizen informant is presumed to be reliable.'" *Id*. (quoting *Caldarola*, 298 F.3d at 165).

In the instant case, immediately after the shooting occurred, two eyewitnesses drove to the police precinct and informed Detective Morris that a person named Manny had fired shots into their car. (*Wade/Dunaway* Tr. 48-49.) They described

the shooter as an individual they knew from the neighborhood,
and provided Detective Morris with a physical description.
(*Id.*)  Then the next morning, a third person came to the
precinct and told Detective Morris that Manny, a person he also
knew from the neighborhood, was the shooter and that Manny had
been arrested the night before for a turnstile jumping charge.
(*Id.* at 50-51.)  Upon further investigation, Detective Morris
discovered that transit officers had arrested petitioner, who
matched the description of the shooter provided by the
eyewitnesses, the evening before for jumping over a subway
turnstile.  (*Id.* at 52-53.)  After learning that petitioner's
name was also Manny (*id.* at 53), Detective Morris placed him in
a lineup in which four eyewitnesses positively identified
petitioner, one day after the shooting, as the individual they
saw shoot the victim, and a fifth witness identified petitioner
as the person that he saw running from the scene.  (*Id.* at 59-
61.)  Given these facts, Detective Morris had sufficient
probable cause to detain petitioner on the homicide charge.

Accordingly, both claims underlying the ineffective
assistance of counsel claim asserted by petitioner – the right
to counsel and unlawful detention claims – lack any merit.  The
failure by appellate counsel to raise meritless claims on appeal
does not constitute ineffective assistance.  *See Noble*, 363 F.
App'x at 773 ("An attorney's '[f]ailure to make a meritless

argument does not amount to ineffective assistance.'" (quoting
*Arena*, 180 F.3d at 396)). Therefore, the ineffective assistance
of counsel claim is dismissed on the merits.

Moreover, even assuming, *arguendo*, that the underlying
right to counsel and unlawful detention claims were not
frivolous, petitioner still cannot meet the performance prong
under *Strickland* because, in the context of ineffective
assistance of appellate counsel, it is insufficient to show that
appellate counsel merely omitted a non-frivolous argument on
appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983). In fact, the
role of appellate counsel is to winnow out weaker claims to
present the strongest claims on direct appeal. *See id*. at 751.

In the instant case, on direct appeal, appellate
counsel raised only one issue, i.e. whether the sentence imposed
on petitioner was excessive. (First *Coram Nobis* ¶ 11.) In
support of this claim, appellate counsel submitted a supporting
brief, in which she thoroughly reviewed the relevant facts,
including petitioner's young age at the time of the incident,
his sincere remorse for his crime, his personal struggles with
alcoholism, and his minimal criminal record. (Pet. App'x, Ex.
A, Appellant Brief dated Jan. 25, 2000 ("Br. Appellant") at 6-
7.) Further, appellate counsel coherently argued, citing
supporting case law, that given these factors, the permissible
range of imprisonment was fifteen years to life, not twenty

years to life, and that the court had the power to reduce this sentence in its discretion. (Br. Appellant at 7-8.)

Given this record, appellate counsel's decision to omit the right to counsel and unlawful detention claims on appeal does not fall "outside the wide range of professionally competent assistance" and therefore, it cannot form the basis of an ineffective assistance of counsel claim. *See Mayo,* 13 F.3d at 533 (internal quotation marks and citation omitted).

The court concludes, therefore, that petitioner cannot satisfy the performance prong of the *Strickland* standard because his appellate counsel's performance did not fall below the objective standard of reasonableness. Because petitioner has made an insufficient showing under the performance prong, the court need not determine whether petitioner satisfies the prejudice prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court . . . to address both [the prejudice and performance prong] components of the inquiry if the defendant makes an insufficient showing on one."). Consequently, petitioner's claim that his appellate counsel was ineffective is denied on the merits.

**CONCLUSION**

For the foregoing reasons, the application for a writ of habeas corpus is denied in its entirety. Because petitioner has not made a substantial showing of the denial of any

constitutional right, the court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253; *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259-260 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). Further, the court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying petition would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is respectfully requested to dismiss the petition, enter judgment in favor of respondent, and close this case. Respondent shall serve a copy of this Memorandum and Order upon petitioner and file a Certificate of Service on the electronic docket by July 18, 2011.

**SO ORDERED.**

Dated:     July 14, 2011
            Brooklyn, New York

                                 /s/
                               **KIYO A. MATSUMOTO**
                               United States District Judge
                               Eastern District of New York